DORSEY & WHITNEY LLP
Bruce R. Ewing
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| THE PROCTER & GAMBLE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| APOLLO HEALTH & BEAUTY CARE | ) | **JURY TRIAL DEMANDED** |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff The Procter & Gamble Company ("P&G"), as and for its Complaint against

defendant Apollo Health & Beauty Care Corporation ("Apollo"), alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff P&G is a corporation organized under the laws of the State of Ohio, with

its principal place of business located in Cincinnati, Ohio.

2.     Upon information and belief, defendant Apollo is a corporation organized under

the laws of Canada, with its principal places of business located at 1 Apollo Place, Toronto,

Ontario, M3J OH2, Canada.

3.     This is a civil action for trade dress infringement, unfair competition and dilution

in violation of §§ 43(a)(1)(A) and 43(c) of the U.S. Trademark Act of 1946, as amended (the

"Lanham Act"), 15 U.S.C. §§ 1125(a)(1)(A) and 1125(c); and for trademark infringement, unfair competition and dilution under the laws of the State of New York.

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The amount in controversy herein exceeds the sum of $75,000, exclusive of interest and costs.

5.     Upon information and belief, this Court has personal jurisdiction over Apollo under CPLR 302 because Apollo sells and distributes its goods to customers within the State of New York, and because it has engaged in tortious acts within the State of New York.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(c).

### P&G AND ITS HEAD AND SHOULDERS TRADE DRESS

6.     P&G is one of the world's largest consumer products companies that was founded in 1837.  Over time, P&G has created a portfolio of brands that are market leaders in their respective categories, including TIDE laundry detergent, PAMPERS diapers, CREST toothpaste and, of particular relevance to this action,  HEAD & SHOULDERS shampoo and related hair care products.

7.     In or about 1950, researchers at P&G began developing an improved anti-dandruff shampoo.  After determining that a particular ingredient – pyrithione zinc – was particularly effective against dandruff, these researchers developed HEAD & SHOULDERS shampoo, which was tested in 1960 and launched in 1961 in the U.S.  Over time, HEAD & SHOULDERS has become the number one shampoo product in the world in terms of revenue generated and units sold.  In the U.S., HEAD & SHOULDERS is also the leading anti-dandruff shampoo brand.

8.     The HEAD & SHOULDERS line of products contains many different variations of the product, including, among others, "Classic Clean," which is the "standard" version of

2

HEAD & SHOULDERS; "Dry Scalp Care," which is designed to be used by people with particularly dry scalps; and scented versions like "Green Apple." HEAD & SHOULDERS products also come in a variety of sizes.

9.      Since approximately 2007, almost all shampoos sold under the HEAD & SHOUDERS trademark have been packaged in an inherently distinctive, non-functional trade dress consisting of the following elements: (i) a predominantly white bottle; with (ii) a flat right side; (iii) a convex left side; (iv) a translucent blue cap whose dimensions are consistent with those of the bottle; and (v) labeling that uses certain graphic images and colors to differentiate among the various types of HEAD & SHOULDERS products, such as the "Classic Clean" and "Dry Scalp Care" shampoos mentioned above (the "HEAD & SHOULDERS Trade Dress"). Images depicting the HEAD & SHOULDERS Trade Dress are included in Exhibit 1 hereto and shown below.



3

10.    The Head & Shoulders Trade Dress was the culmination of an extensive design process aimed at developing a modern, eye-catching design for HEAD & SHOULDERS products that would stand out from other designs on product shelves.  Over time, purchasers of dandruff shampoos have come to recognize the HEAD & SHOULDERS Trade Dress as both a highly recognizable and unique symbol of the brand.

11.    Between 2012 and the end of 2015, products packaged in the HEAD & SHOULDERS Trade Dress generated at least $600 million cumulatively in retail sales in the U.S.  In addition, P&G expended at least $78 million on the advertising and promotion of products packaged in the HEAD & SHOULDERS Trade Dress.  Many of those advertisements, which have appeared in print, televised, digital, electronic and other media, prominently depicted the HEAD & SHOULDERS Trade Dress.  Examples of such advertisements appear in Exhibit 2 hereto.

12.    As a result of the extensive sales, advertising, marketing and promotion of products sold in the HEAD & SHOULDERS Trade Dress, that inherently distinctive, non-functional Trade Dress has become famous, and consumers associate the HEAD & SHOULDERS Trade Dress exclusively with P&G and recognize that Trade Dress as designating the source of P&G's HEAD & SHOULDERS products.  The goodwill inherent in the HEAD & SHOULDERS Trade Dress is an important asset of P&G whose value is incalculable.

### APOLLO AND ITS INFRINGING AND DILUTING PRODUCTS

13.    Upon information and belief, Apollo is a supplier of, among other things, hair care products that are intended to replicate or approximate either the formulas or active ingredients of leading national brands.  Such products are, upon information and belief, often sold by Apollo to retailers for later sale to consumers as "private label" or "store brand" versions of such national brands.  Many national retailers offer private label versions of leading national

brands that bear the retailers' "house" trademark, and consumers are often invited to compare the private label product to the national brand to which it corresponds.

14. Upon information and belief, Apollo is supplying to retailers, notably including Wal-Mart and Sam's Club, private label versions of HEAD & SHOULDERS hair care products in packaging that is substantially similar to the HEAD & SHOULDERS Trade Dress (the "Apollo Products"). Specifically, the Apollo Products employ a trade dress consisting of the following elements: (i) a predominantly white bottle; with (ii) a flat right side; (iii) a convex left side; (iv) a translucent blue cap whose dimensions are consistent with those of the bottle; and (v) labeling that uses certain graphic images and colors to differentiate among the various types of Apollo products, such as the "Everyday Clean" and "Dry Scalp Control" shampoos (the "Apollo Trade Dress"). Examples of the Apollo Trade Dress are shown in Exhibit 3 hereto and depicted below.



15. Not only does the Apollo Trade Dress misappropriate all of the key elements of the HEAD & SHOULDERS Trade Dress as a general matter, it does so on a product by product basis. As shown in Exhibit 4 hereto and also depicted below, Apollo has created knockoffs of HEAD & SHOULDERS products that replicate the graphic designs of multiple versions of

P&G's products, down to the variations in colors and images used on each of the products in the HEAD & SHOULDERS line.



16.     Upon information and belief, Apollo, in common with the rest of the trade and public, is well aware of the HEAD & SHOULDERS Trade Dress, and of the goodwill represented and symbolized thereby.  Notwithstanding said awareness, and in fact by reason of same, Apollo has knowingly distributed, offered for sale and/or sold in commerce throughout the United States, including within this District, products that bear the confusingly similar and diluting Apollo Trade Dress.

17.     Such use of the Apollo Trade Dress is intended to, and is likely to, cause confusion, mistake or deception of the trade and public, and to cause them to believe falsely that Apollo's products sold under such mark and using such trade dress are authorized, sponsored or approved by P&G or are otherwise associated, affiliated or connected with P&G and/or P&G's HEAD & SHOULDERS products and Trade Dress.  Such use also has caused and is likely to cause dilution of the distinctive quality of such Trade Dress.

6

18. Apollo's activities have caused and will continue to cause irreparable harm to P&G and to the substantial goodwill embodied in the HEAD & SHOULDERS Trade Dress, and said acts will continue unless restrained by this Court.

19. P&G has no adequate remedy at law and has suffered and will continue to suffer damage as a result of Apollo's use of the Apollo Trade Dress.

## COUNT I

## FEDERAL UNFAIR COMPETITION

20. P&G repeats and realleges each and every allegation set forth in paragraphs 1 through 19 as if fully set forth herein.

21. Apollo's conduct constitutes unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

22. Apollo's unlawful conduct is willful.

23. As a result of Apollo's conduct, P&G has suffered and will continue to suffer damage.

24. Apollo's activities have caused and will continue to cause irreparable harm to P&G and to the substantial goodwill embodied in the HEAD & SHOULDERS Trade Dress, and such acts will continue unless restrained by this Court.

## COUNT II

## FEDERAL TRADEMARK DILUTION

25. P&G repeats and realleges each and every allegation set forth in paragraphs 1 through 24 as if fully set forth herein.

26. Apollo's conduct constitutes trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

27. Apollo's unlawful conduct is willful.

7

28.     As a result of Apollo's conduct, P&G has suffered and will continue to suffer damage.

29.     Apollo's activities have caused and will continue to cause irreparable harm to P&G and to the substantial goodwill embodied in the HEAD & SHOULDERS Trade Dress, and such acts will continue unless restrained by this Court.

## COUNT III

## COMMON LAW TRADEMARK INFRINGEMENT

30.     P&G repeats and realleges each and every allegation set forth in paragraphs 1 through 29 as if fully set forth herein.

31.     Apollo's actions constitute infringement of P&G's rights in the HEAD & SHOULDERS Trade Dress in violation of New York common law.

32.     Apollo's infringement is willful.

33.     As a result of Apollo's conduct, P&G has suffered and will continue to suffer damage.

34.     Apollo's activities have caused and will continue to cause irreparable harm to P&G and to the substantial goodwill embodied in the HEAD & SHOULDERS Trade Dress, and such acts will continue unless restrained by this Court.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

35.     P&G repeats and realleges each and every allegation set forth in paragraphs 1 through 34 as if fully set forth herein.

36.     Apollo's actions constitute unfair competition in violation of New York common law.

37.     Apollo's actions were undertaken in bad faith.

38.    As a result of Apollo's conduct, P&G has suffered and will continue to suffer damage.

39.    Apollo's activities have caused and will continue to cause irreparable harm to P&G and to the substantial goodwill embodied in the HEAD & SHOULDERS Trade Dress, and such acts will continue unless restrained by this Court.

## COUNT V

## DILUTION IN VIOLATION OF NEW YORK G.B.L. § 360-l

40.    P&G repeats and realleges each and every allegation set forth in paragraphs 1 through 39 as if fully set forth herein.

41.    Apollo's actions constitute dilution in violation of New York General Business Law § 360-l.

42.    Apollo's acts of dilution are willful, in that Apollo has deliberately intended to trade upon the reputation of P&G and the HEAD & SHOULDERS Trade Dress and to cause dilution of such famous and distinctive trade dress.

43.    As a result of Apollo's conduct, P&G has suffered and will continue to suffer damage.

44.    Apollo's activities have caused and will continue to cause irreparable harm to P&G and to the substantial goodwill embodied in the HEAD & SHOULDERS Trade Dress, and such acts will continue unless restrained by this Court.

WHEREFORE, P&G prays for a judgment:

1.    Preliminarily and then permanently enjoining and restraining Apollo, its officers, agents, servants, employees, licensees, distributors, attorneys, corporate affiliates, successors and assigns, and/or all persons or entities acting in concert or participation with them, or any of them, from the advertising, promotion, marketing, offering to sell or selling of goods using: (i) the

Apollo Trade Dress depicted in Exhibits 3 and 4 hereto, or any variation thereof; and (ii) any other trade dress, false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Apollo's business or goods are in any way associated or affiliated with or related to P&G, P&G's HEAD & SHOULDERS products, or to dilute the distinctive quality of the HEAD & SHOULDERS Trade Dress;

2.      Directing Apollo to deliver up for destruction or other disposition, within thirty (30) days of the entry of final judgment herein, any and all molds, merchandise, packaging, labels, stationery, design and manufacturing materials, advertising and other materials in its possession, whether in hard copy, electronic or any other format, that bear any trademark or designation in violation of P&G's rights as decreed herein;

3.      Directing Apollo to file with the Court and serve on counsel for P&G, within (30) thirty days after entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116;

4.      Directing Apollo to account to P&G for its profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117;

5.      Awarding P&G damages in an amount to be determined at trial, including damages in the amount of Apollo's profits from its willful infringement of P&G's HEAD & SHOULDERS Trade Dress, trebled where appropriate;

6.      Awarding P&G its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117; and

7.      Awarding P&G such other and further relief as the Court deems just and proper.

10

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all of its claims and any other matters so triable.

Date:  July 15, 2016                                        Respectfully Submitted,

DORSEY & WHITNEY LLP


By____/s/_____
Bruce R. Ewing
51 West 52nd Street
New York, New York 10025
Tel. 212-415-9206
ewing.bruce@dorsey.com

***Attorneys for Plaintiff The Procter & Gamble Company***